**Electronically Filed
Supreme Court
SCAP-17-0000480
11-MAR-2020
09:48 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

HONOLULU CIVIL BEAT INC.,
Plaintiff-Appellant,

vs.

DEPARTMENT OF THE ATTORNEY GENERAL,
Defendant-Appellee.

_____

SCAP-17-0000480

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CAAP-17-0000480; CIV. NO. 16-1-1743-09)

MARCH 11, 2020

RECKTENWALD, C.J., McKENNA, POLLACK, AND WILSON, JJ. AND
CIRCUIT JUDGE WONG, IN PLACE OF NAKAYAMA, J. RECUSED

OPINION OF THE COURT BY WILSON, J.

In response to a Uniform Information Practices Act

("UIPA")[1] request from Plaintiff-Appellant Honolulu Civil Beat

Inc. ("Civil Beat") to Defendant-Appellee the Department of the

_____
[1] Hawai'i Revised Statutes ("HRS") Chapter 92F (Supp. 2018).

Attorney General ("the Department") for the results of an investigation into the Office of the Auditor, the State refused to produce any documentation; its refusal was based in part on the lawyer-client privilege and the professional rule protecting confidential lawyer-client communications. We hold that the State may not exclude a government record from disclosure under the UIPA on the basis of a lawyer-client relationship between two State entities which is "asserted but not proved[.]" Ipse Dixit, Black's Law Dictionary (11th ed. 2019). "An ipse dixit claim of privilege is insufficient." Sapp v. Wong, 62 Haw. 34, 38, 609 P.2d 137, 140 (1980).

## I.   BACKGROUND

### A.   Investigation of the Office of the Auditor

Pursuant to the Hawai'i Constitution, the legislature, by a majority vote of each house in joint session, appoints a state auditor, who serves for an eight-year term. Haw. Const. art. VII, § 10. The auditor's constitutional duties are to conduct post-audits of the transactions, accounts, programs, and performance of all state departments, offices, and agencies; to certify the accuracy of financial statements issued by the respective accounting officers; to report the auditor's findings and recommendations to the governor and the legislature; and to make additional reports and conduct additional investigations as

2

directed by the legislature.  Id.  The legislature can remove an auditor for cause by a two-thirds vote of the members in joint session.  Id.

On April 22, 2015, the Department began an investigation of the Office of the Auditor in response to information it received from a legislator.  On April 23, 2015, the Department requested that the legislator send it a letter formally requesting an investigation.  A letter from the legislator requesting the investigation was received by the Department on April 24, 2015.  The contents of the letter are not in the record.

An employee of the Department conducted the requested investigation, which the employee referred to as an "administrative investigation[.]"  The employee drafted a report based on the investigation.  That report, dated February 8, 2016, is in the record under seal, as is a declaration of its author and a brief follow up report dated April 11, 2016.  The report was sent to the legislature in the spring of 2016.

B.  **Civil Beat's UIPA Request**

On April 27, 2016, a reporter for Civil Beat emailed a special assistant to the attorney general, requesting, "[p]ursuant to Hawaii's public records law," "access to or copies of all final investigative reports related to the state

3

auditor's office from Jan. 1, 2015 to present." The term "Hawaii's public records law" in the April 27, 2016 email was understood by the trial court to be referring to the UIPA. The only document in the Department's custody that met the reporter's description was the February 8, 2016 investigative report.

On May 11, 2016, the Department responded with a "Notice to Requester" which denied Civil Beat's request in its entirety based on two exceptions to the UIPA's disclosure requirements, HRS § 92F-13(1) and (3).[2] As justification for its denial of the request under these exceptions, the Department explained that disclosure of the report would constitute a clearly unwarranted invasion of personal privacy and would frustrate a legitimate government purpose:

> The individuals identified in the requested record
> have a significant privacy interest in the personnel
> information contained in the record which outweighs any
> public interest in disclosure. Due to the nature of the

---

[2] HRS § 92F-13 is entitled "Government records; exceptions to the general rule." Subsections (1) and (3) provide:

This part shall not require disclosure of:

(1) Government records which, if disclosed, would constitute a clearly unwarranted invasion of personal privacy;

. . .

(3) Government records that, by their nature, must be confidential in order for the government to avoid the frustration of a legitimate government function[.]

4

information contained within the record, segregation of identifying information is not possible. Disclosure of the requested record would constitute a clearly unwarranted invasion of personal privacy of the individuals identified within the record.

In addition, the requested record is protected by the deliberative process privilege and must remain confidential in order to avoid the frustration of a legitimate government function.

On August 23, 2016, the Department sent Civil Beat an "Amended Notice to Requester" denying the request in its entirety on the basis of an additional exception, HRS § 92F-13(4).[3] As justification, the Department stated that the record was "confidential and subject to the attorney client privilege."

C. Circuit Court Proceedings

Civil Beat filed a complaint against the Department in the Circuit Court of the First Circuit ("circuit court"). In its complaint, Civil Beat alleged that the Department's stated reasons for nondisclosure did not justify withholding the requested record in its entirety and that the Department had denied Civil Beat its right to access government records under the UIPA. Civil Beat requested that the circuit court enter an

---

[3]     HRS § 92F-13(4) provides:

This part shall not require disclosure of:

. . .

(4) Government records which, pursuant to state or federal law including an order of any state or federal court, are protected from disclosure[.]

5

order directing the Department to disclose all public information sought in its April 27, 2016 request.

The Department filed an answer and a motion for summary judgment, arguing that the UIPA exceptions it identified in its Notice to Requester and Amended Notice to Requester protected the record from disclosure. The Department attached to its motion for summary judgment a declaration of the First Deputy Attorney General ("First Deputy Declaration"). The First Deputy Declaration states that in the spring of 2015, the Department "received a communication from the Legislature requesting that the Department conduct an investigation and provide a report to the Legislature on matters relating to the Office of the Legislative Auditor[,]" that the Department conducted the investigation and transmitted the report to the legislature in the spring of 2016, and that "[t]he report contains information which would reveal the communications between the Legislature and the Department, which are attorney client communications related to legal services provided by the Department to the Legislature." Civil Beat also filed a motion for summary judgment on the grounds that the Department had not and could not meet its burden to prove that the record was exempt from disclosure.

In the Department's reply memorandum in support of its motion for summary judgment and in opposition to Civil Beat's motion, the Department stated that it would be willing to submit the requested record to the court under seal.[4] Civil Beat opposed in camera review of the report in its reply memorandum. Prior to a hearing on the motions, the circuit court reviewed the record in camera.

On April 20, 2017, the circuit court held a hearing on the Department's motion for summary judgment and Civil Beat's cross-motion for summary judgment.[5] The court granted the Department's motion for summary judgment and denied Civil Beat's motion for summary judgment.

The court concluded that HRS § 92F-13(4), which exempts government records protected from disclosure by state law from the requirements of the UIPA, applies to the facts of this case. The court first stated that HRS § 26-7 (2009) "authorizes the Department to render legal services to the State legislature"[6] and that HRS § 28-4 (2009) "requires that the

---

[4]    HRS § 92F-15(b) provides:

In an action to compel disclosure, . . . [t]he circuit court may examine the government record at issue, in camera, to assist in determining whether it, or any part of it, may be withheld.

[5]    The Honorable Keith K. Hiraoka presided.

[6]    HRS § 26-7 (2009) provides:

(continued . . .)

7

Attorney General advise and counsel the legislature without charge at all times when called upon."[7]  The circuit court defined the parameters of the lawyer-client privilege with reference to Hawaiʻi Rules of Evidence ("HRE") Rule 503 (1992) and the professional rule protecting confidential communications with reference to Hawaiʻi Rules of Professional Conduct ("HRPC") Rule 1.6 (2014).  It explained that HRE Rule 503 "recognizes a lawyer-client privilege" for "confidential communications between a lawyer or a representative of the lawyer and that lawyer's client made for the purpose of facilitating the rendition of professional legal services to the client."[8]  The

---

(. . . continued)

        . . .

        The department shall administer and render state legal services,
        including furnishing of written legal opinions to the governor,
        legislature, and such state departments and officers as the
        governor may direct . . . .

[7]     HRS § 28-4 (2009) provides:

        The attorney general shall, without charge, at all times when
        called upon, give advice and counsel to the heads of departments,
        district judges, and other public officers, in all matters
        connected with their public duties, and otherwise aid and assist
        them in every way requisite to enable them to perform their
        duties faithfully.

[8]     HRE Rule 503(b)(1) provides:

        **General rule of privilege.**  A client has a privilege to refuse to
        disclose and to prevent any other person from disclosing
        confidential communications made for the purpose of facilitating
        the rendition of professional legal services to the client . . .

                                        (continued . . .)

8

circuit court noted that HRPC Rule 1.6(a) "states that a lawyer shall not reveal confidential information relating to the representation of a client unless the client consents."[9]

The court, having reviewed the report in camera, found that "it was prepared by the Department in response to the legislature's request for a rendition of services[,]" and concluded that it was a communication subject to the lawyer-client privilege under HRE Rule 503. Because there was no evidence that the legislature had consented to the Department revealing any of the information contained in the report, the circuit court further concluded that the report was a confidential communication covered by HRPC Rule 1.6. Accordingly, it held that the report was protected from disclosure under state law—HRE Rule 503 and HRPC Rule 1.6—and was therefore exempt from the UIPA under HRS § 92F-13(4).

The circuit court entered final judgment in favor of the Department and against Civil Beat, and dismissed any remaining claims with prejudice.

---

(. . . continued)

  between the client or the client's representative and the lawyer or the lawyer's representative . . .

[9] HRPC Rule 1.6(a) provides:

  A lawyer shall not reveal confidential information relating to the representation of a client unless the client consents after consultation . . . .

**D.  Appeal and Transfer**

Civil Beat filed an appeal in the Intermediate Court of Appeals ("ICA").  On appeal, Civil Beat raised three points of error:

> 1.  Whether the circuit court erred by, *sua sponte*, using HRPC 1.6 as a confidentiality statute to bar disclosure of non-privileged client information in the possession of the Department of the Attorney General.
>
> . . .
>
> 2.  Whether the circuit court erred by holding that the Department of the Attorney General met its burden of proof to justify withholding from the public the non-privileged facts in the Department's investigation of the Office of the Auditor.
>
> . . .
>
> 3.  Whether the circuit court erred by reviewing the investigation report *in camera* without first requiring the Department of the Attorney General to provide non-privileged information about the report in the public record.

Once briefing before the ICA was complete, Civil Beat filed an application to transfer the case to the supreme court, and transfer was accepted.

## II.  STANDARDS OF REVIEW

**A.  Abuse of Discretion**

"A court abuses its discretion if it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant."  <u>AC v. AC</u>, 134 Hawaiʻi 221, 229, 339 P.3d 719, 727 (2014) (internal quotation marks, brackets, and citations omitted).

10

**B.  Grant or Denial of Summary Judgment**

> "Appellate courts review an award of summary judgment de novo under the same standard applied by the circuit court. . . .  Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  This court must review the evidence and inferences in the light most favorable to the non-moving party.

Salera v. Caldwell, 137 Hawaiʻi 409, 415, 375 P.3d 188, 194 (2016) (internal citations omitted).

## III.  DISCUSSION

**A.  The circuit court did not abuse its discretion by reviewing the report in camera.**

The circuit court's decision to conduct an in camera review of the investigative report without first requiring the Department to provide non-privileged information about the report was not an abuse of its discretion.

The judicial enforcement section of the UIPA provides that, "[i]n an action to compel disclosure, . . . [t]he circuit court may examine the government record at issue, in camera, to assist in determining whether it, or any part of it, may be withheld."  HRS § 92F-15(b).  "The plain language of a statute is 'the fundamental starting point of statutory interpretation.'"  State v. Anzalone, 141 Hawaiʻi 445, 454, 412 P.3d 951, 960 (2018) (quoting State v. DeMello, 136 Hawaiʻi 193, 195, 361 P.3d 420, 422 (2015)).  The plain language of HRS §

11

92F-15(b) provides that the circuit court's decision to examine the record in camera is discretionary. See State v. Kui Ching, 46 Haw. 135, 138, 376 P.2d 379, 381 (1962) ("Legislatively, it is common practice to use the word 'may' to indicate discretionary authority."). There are no express statutory limitations on the exercise of this power, other than the requirement that in camera review be employed to assist the circuit court in its determination of whether a record or part of a record may be withheld. The discretion available to the court to conduct in camera review pursuant to HRS § 92F-15(b) is broad and is not limited to instances in which one of the parties makes a request. See Anastasi v. Fid. Nat. Title Ins. Co., 134 Hawai'i 400, 419 n.19, 341 P.3d 1200, 1219 n.19 (App. 2014) (noting that there is no restriction preventing Hawai'i courts from reviewing communications claimed to be privileged without the request or agreement of the party claiming the privilege and that "in camera review is utilized by our courts, as demonstrated in this case").

In this case, the circuit court was presented with the Department's motion for summary judgment and Civil Beat's cross-motion for summary judgment. The Department argued that the report at issue met three exceptions to the UIPA's general disclosure requirement, HRS § 92F-13(1), (3), and (4), while

12

Civil Beat argued that the Department had not met its burden to prove that the report met any of the exceptions.  Given that one party knew the general character,[10] but not the contents, of the report, and the other was trying to avoid disclosing its contents, some of the parties' arguments were naturally speculative or vague.  For example, the Department's memorandum in support of its motion argued that "the record contains confidential personal information about employees of the Office of the Legislative Auditor" without specifying what manner of personal information the report contains.  In its memorandum, Civil Beat stated that "it is not clear that the report even concerns a person, such that it would implicate personal privacy interests."  The circuit court decided that reviewing the report itself would assist it in making a determination about whether the report legally had to be disclosed.  Its decision to do so was clearly not an abuse of discretion.  To the contrary, the decision to review the report was reasonable, based on the

---

[10]    Based on its reporter's April 27, 2016 email, Civil Beat was apparently aware that the Department had access to a "final investigative report" related to the Office of the Auditor and prepared after January 1, 2015.

limited information possessed by the court and the parties, and squarely within the text and purpose of HRS § 92F-15(b).[11]

Civil Beat does not present any argument that would cause us to interpret HRS § 92F-15(b) contrary to its plain meaning.  Rather, it offers policy reasons why the circuit court should have delayed in camera review until after the Department made additional public disclosures about the record at issue. In particular, Civil Beat contends that in camera review limits effective advocacy by depriving the party seeking disclosure of the information necessary to argue for its position, which unfairly distorts the process in favor of the party opposing disclosure.  Civil Beat suggests that we adopt a procedure analogous to the one required in federal actions to compel

---

[11]    The federal Freedom of Information Act ("FOIA") also provides for in camera review of records by a trial court.  5 U.S.C. § 552(a)(4)(B) (2018) ("the [U.S. district] court . . . may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exceptions set forth in subsection (b) of this section . . . .").  "The in camera review provision is discretionary by its terms, and is designed to be invoked when the issue before the District Court could not be otherwise resolved[.]"  N.L.R.B. v. Robbins Tire & Rubber Co., 437 U.S. 214, 224 (1978).  The D.C. Circuit has observed that FOIA requesters typically prefer an in camera examination "since the alternative is the district court's sole reliance on the affidavits and descriptions of the agency."  Spirko v. U.S. Postal Serv., 147 F.3d 992, 996 (D.C. Cir. 1998). It "has yet to identify particular circumstances under which in camera inspection would be inappropriate, although several concerns counsel against hasty resort to in camera review[.]"  Id. at 996-97 (emphasis in original). But it is not an abuse of discretion for a federal trial court to proceed to in camera review when the agency has provided information sufficient for the trial court to determine that its review of the documents would not burden judicial resources, and that seeking further disclosure would not advance the just, speedy, and inexpensive determination of the case.  Id. at 998.

disclosure under FOIA by Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973).

In Vaughn, the U.S. Court of Appeals for the D.C. Circuit devised a process to "(1) assure that a party's right to information is not submerged beneath governmental obfuscation and mischaracterization, and (2) permit the court system effectively and efficiently to evaluate the factual nature of disputed information."  484 F.2d at 826.  Its solution, known as the Vaughn index, requires a non-disclosing federal agency to "(1) identify each document withheld; (2) state the statutory exemption claimed; and (3) explain how disclosure would damage the interests protected by the claimed exemption."  Citizens Comm'n on Human Rights v. Food & Drug Admin., 45 F.3d 1325, 1326 n.1 (9th Cir. 1995).

The circuit court's failure in this case to require the Department to produce additional information in the nature of a Vaughn index did not amount to an abuse of its discretion. While we look favorably upon Vaughn, and do not conclusively rule out the possibility that such a requirement may exist under our law, we conclude that the Department's explanation of its refusal to disclose the investigative report in this case was sufficient to provide Civil Beat with enough information to argue its position that the report should have been disclosed.

15

In Vaughn, the volume of the documents ostensibly exempt from disclosure was unknown, the party seeking disclosure was seriously disadvantaged by its lack of information, and the judicial effort required to determine whether certain statutory exemptions applied would have been "immense."  484 F.2d at 825. In this case, the documents the Department sought to exempt were not innumerable and mysterious; rather, the disputed record consisted of a single report, the existence and general character of which both parties appear to have been aware.  And the effort required to determine the applicability of the exemptions in HRS § 92F-13 was not "immense."  The circuit court resolved the question of whether the report was subject to disclosure under the UIPA on the basis of the lawyer-client privilege and the professional conduct rule forbidding disclosure of confidential client communications, exceptions that both parties were adequately equipped to dispute and that did not require extensive judicial review of the entire report.

**B.  The circuit court erred in granting summary judgment to the Department on the basis that the Department proved that the investigative report was prepared pursuant to a lawyer-client relationship between the Department and the legislature.**

The issue on the Department's motion for summary judgment was whether the investigative report prepared by the Department about the Office of the Auditor is protected from disclosure under the exceptions to the UIPA's general rule of

16

disclosure. See HRS § 92F-13. The circuit court held that the report was prepared pursuant to a lawyer-client relationship between the Department and the legislature and is thus protected from disclosure under HRS § 92F-13(4), the exception that applies to government records protected by state or federal law.

The UIPA contains a strong presumption in favor of public disclosure of government records. See HRS §§ 92F-2, 92F-11(a).[12] In an action to compel disclosure, "[t]he agency has the burden of proof to establish justification for nondisclosure." HRS § 92F-15(c). Thus, the Department bore the burden under HRS § 92F-15(c) to prove that the lawyer-client privilege and confidentiality rules protected the investigative report from disclosure.[13] In this case, the Department failed to meet its burden.

---

[12] Relatedly, the Hawai'i Rules of Evidence provide that no person has a privilege to refuse to disclose any matter, unless such a privilege is provided for by the constitutions, statutes, or court rules of the United States or the State of Hawai'i. HRE Rule 501(2) (1980).

[13] The UIPA states that the director of the Office of Information Practices ("OIP") may provide advisory opinions regarding the rights of the public and the functions and responsibilities of agencies under the UIPA, HRS § 92F-42(3), and that OIP opinions are admissible and precedential in actions to compel disclosure unless found to be "palpably erroneous," HRS § 92F-15(b); see Peer News LLC v. City & Cty. of Honolulu, 143 Hawai'i 472, 485, 431 P.3d 1245, 1258 (2018). OIP has opined that records protected by the lawyer-client privilege are covered by HRS § 92F-13(4). OIP Op. Ltr. No. F14-01 at 6 (June 5, 2014); OIP Op. Ltr. No. 91-23 at 9 (Nov. 25, 1991). While we do not find that conclusion to be "palpably erroneous," that is not the end of the inquiry in this case.

17

**1. Both the lawyer-client privilege, HRE Rule 503, and the professional rule requiring confidentiality, HRPC Rule 1.6, can apply to the Department when it is in a lawyer-client relationship with the legislature.**

In order for a document to be protected from disclosure pursuant to the lawyer-client privilege, as defined in HRE Rule 503, the document must contain information communicated within the context of a lawyer-client relationship. HRE Rule 503(b) provides for an evidentiary privilege for confidential lawyer-client communications: "[a] client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between the client or the client's representative and the lawyer or the lawyer's representative . . . ."[14]

With regard to the lawyer-client privilege, we have held that "[p]roper practice requires preliminary judicial inquiry into the existence and validity of the privilege and the burden of establishing the privilege rests on the claimant." Sapp, 62 Haw. at 38, 609 P.2d at 140. This inquiry must be

---

[14] "A 'client' is a person, public officer, or corporation, association, or other organization or entity, either public or private, who is rendered professional legal services by a lawyer, or who consults with a lawyer with a view to obtaining professional legal services." HRE Rule 503(a)(1). "A 'lawyer' is a person authorized, or reasonably believed by the client to be authorized, to practice law in any state or nation." HRE Rule 503(a)(3).

18

"meaningful" and "'turns largely on the client's subjective belief that it exists,' and the character of the communication, which must be intended as confidential[.]" DiCenzo v. Izawa, 68 Haw. 528, 536, 723 P.2d 171, 176 (1986) (quoting In re McGlothen, 663 P.2d 1330, 1334 (Wash. 1983)). Thus, in order to determine whether the Department could properly claim that the report is protected from disclosure by state law, a meaningful preliminary judicial inquiry must be conducted to determine whether it was communicated in the context of a lawyer-client relationship. If uncontroverted evidence submitted by the Department to the circuit court establishes that the legislature believed that it was entering into a lawyer-client relationship and that the report was a document communicated to it in confidence, the report may have been protected from disclosure by HRS § 92F-13(4).

The Department of the Attorney General and the legislature or its members may at times enter into a lawyer-client relationship, such as when the Department is required to provide legal services to the legislature or a legislator. See Chun v. Bd. of Trs. of Emps.' Ret. Sys. of State of Haw., 87 Hawai'i 152, 173, 952 P.2d 1215, 1236 (1998) ("The Legislature has thus created a traditional attorney-client relationship between the Attorney General and the state officers or

instrumentalities she is required to represent." (quoting

Manchin v. Browning, 296 S.E.2d 909, 920 (W.Va. 1980)) (brackets

omitted)).  The statute that defines the Department's primary

duties, HRS § 26-7, includes among those duties the provision of

legal services to the legislature:

> The department shall administer and render state legal
> services, including furnishing of written legal opinions to
> the governor, legislature, and such state departments and
> officers as the governor may direct; represent the State in
> all civil actions in which the State is a party; approve as
> to legality and form all documents relating to the
> acquisition of any land or interest in lands by the State;
> and, unless otherwise provided by law, prosecute cases
> involving violations of state laws and cases involving
> agreements, uniform laws, or other matters which are
> enforceable in the courts of the State.  The attorney
> general shall be charged with such other duties and have
> such authority as heretofore provided by common law or
> statute.

(Emphasis added.)  When the Department renders state legal

services to the legislature, furnishes written legal opinions to

the legislature, represents the legislature in a civil action,

or otherwise acts as the legislature's lawyer in accordance with

common or statutory law, it is acting in the context of a

lawyer-client relationship.[15]

---

[15]     The Department's statutory duties to the legislature and
legislators are detailed further in HRS Chapter 28 (2009).  See HRS §§ 28-1
(requirement to appear for the State in all cases in which it is a party),
28-3 (requirement to give written opinions upon questions of law submitted by
state officials, including the legislature and legislators), 28-4
(requirement to give advice and counsel to public officers in matters
connected with their public duties).  However, that does not mean that the
Department's powers are limited to those laid out in the statute.  We have
held that the Department is permitted to "exercise all such power as the
public interests may from time to time require[,]" unless expressly

(continued . . .)

The circuit court held that the UIPA exception for records protected from disclosure by law covers the report because it is protected by the lawyer-client privilege. It also held that the exception applies because the report is confidential under HRPC Rule 1.6. HRPC Rule 1.6(a) subjects lawyers to discipline if they fail to keep information about clients confidential: "[a] lawyer shall not reveal confidential information relating to the representation of a client unless the client consents after consultation, the disclosure is impliedly authorized in order to carry out the representation, or" as otherwise provided for in the Rule. When the Department is acting as the legislature's lawyer, it is subject to the same professional conduct rules as any other attorney. See Chun, 87 Hawai'i at 174, 952 P.2d at 1237 ("We have never held, however, that the Attorney General is relieved of all obligations to

_____

(. . . continued)

restricted by statute. Hussey v. Say, 139 Hawai'i 181, 190, 384 P.3d 1282, 1291 (2016) (quoting Chun, 87 Hawai'i at 173, 952 P.2d at 1236). Thus, in the absence of a common law or statutory restriction, the Department may exercise powers not expressly granted by statute, including in its representation of the legislature, or a component part thereof. See id. "The Attorney General's common law duty to protect the public interest is subject to his or her definition of what is in the best interests of the state or public at large." Id. at 190 n.15, 384 P.3d at 1291 n.15.

conform her conduct to the HRPC, which are applicable to all lawyers licensed to practice in the courts of this state.").[16]

Thus, the Department's confidential communications with the legislature as lawyer and client may be privileged under HRE Rule 503 and confidential under HRPC Rule 1.6, unless disclosure of such communications is otherwise required by statute. See, e.g., HRS § 28-3 (requiring that when the attorney general gives a written legal opinion on a question of law at the request of specified state officials, the attorney general must file a copy of the opinion with the lieutenant governor, the public archives, the supreme court library, and

---

[16] Although the Department is subject to the same rules of professional conduct as other lawyers, the HRPC are not "mechanically appl[ied]" to the Department. Chun, 87 Hawai'i at 173, 952 P.2d at 1236 (quoting State v. Klattenhoff, 71 Haw. 598, 603, 801 P.2d 548, 551 (1990)). Strict application of the HRPC to the Department would be impractical:

> due to the multiple duties statutorily imposed upon the AG's office, the ethical rules for private law firms are not necessarily applicable, in all cases, to the AG's office.
>
> The practical reality is that every employee, appointee or elected official in state government who may be advised by the AG, or receive some legal service from the AG is a potential client of the AG.

Klattenhoff, 71 Haw. at 604, 801 P.2d at 551; see also HRPC Rule 1.13 cmt. 8 ("Defining precisely the identity of the client and prescribing the resulting obligations of such lawyers may be more difficult in the government context and is a matter beyond the scope of these Rules."). "Accordingly, there is a risk, in any given case, that the attorney general's professional obligations as legal counsel to her statutory client—a public officer or instrumentality of the state vested with policy-making authority—may clash with her vision of what is in the best global interests of the state or the public at large." Chun, 87 Hawai'i at 170, 952 P.2d at 1233.

the legislative reference bureau for publication and public inspection).[17]

**2. On this record, the Department failed to prove that it was acting in a lawyer-client relationship with the legislature with regard to its investigative report on the Office of the Auditor.**

The Department failed to meet its burden to prove that the Department and the legislature were acting within the context of a lawyer-client relationship with regard to the report. Notwithstanding the Department's conclusory claims that the report was privileged and confidential, the record before this court—including the contents of the sealed investigative report, its attached documents, and information about the circumstances under which it arose and was communicated to the legislature—fails to establish that the Department was acting pursuant to a lawyer-client relationship when it prepared the report and provided it to the legislature.

The investigation into the Office of the Auditor began after the Department received information from a legislator that the Department considered worthy of investigation. Shortly

---

[17] OIP has opined that "the advice and counsel provided by the Attorney General described by section 28-4, Hawaii Revised Statutes, satisfies the elements of the attorney-client privilege set forth by Rule 503, Hawaii Rules of Evidence, chapter 626, Hawaii Revised Statutes, and, therefore, may be withheld from public inspection and copying . . . under section 92F-13(3) and (4), Hawaii Revised Statutes." OIP Op. Ltr. No. 91-23 at 9 (Nov. 25, 1991).

after the investigation began, and at the request of the Department, the legislator sent the Department a letter formally requesting an investigation.

However, the record does not support the inference that the legislator, or the legislature as a whole, would have had a "subjective belief" that, in suggesting that an investigation be conducted, the legislature was requesting that it be supplied with a privileged and confidential document. DiCenzo, 68 Haw. at 536, 723 P.2d at 176 (quoting In re McGlothen, 663 P.2d 1330, 1334 (Wash. 1983))  The record contains no evidence that the letter or any other communication from the legislature or a legislator was a request for legal advice, legal representation, or any other legal service. Rather, what was requested was that an investigation be conducted.  The First Deputy Declaration states that the Department "received a communication from the Legislature requesting that the Department conduct an investigation and provide a report to the Legislature on matters relating to the Office of the Legislative Auditor."  Correspondingly, the circuit court found that the legislature asked the Department "to conduct an investigation relating to the Office of the Auditor" and that the Department "conducted the investigation as

requested by the Legislature and communicated its findings in a report sent to the Legislature[.]"

A request that the Department conduct an investigation is not necessarily a request that it provide legal services. The Department's statutory investigatory powers make this clear. Under HRS § 28-2.5(a), "[t]he attorney general shall investigate alleged violations of the law when directed to do so by the governor, or when the attorney general determines that an investigation would be in the public interest." An investigation under this section may be "a civil, administrative, or criminal investigation[.]" HRS § 28-2.5(b). The author of the investigative report indicated that it represented the results of "an administrative investigation" the author had conducted. There is no indication that this investigation was directed by the governor, but it may have been undertaken because the attorney general determined that it would be in the public interest. That is, the Department may have been exercising its discretionary function to conduct a "public interest" investigation under HRS § 28-2.5. We cannot conclude, simply because the investigation was requested by the legislature, that the Department was necessarily fulfilling a mandatory duty to the legislature, such as rendering state legal

services under HRS § 26-7, giving a legal opinion under HRS § 28-3, or providing legal advice under HRS § 28-4.[18]

Furthermore, when the Department undertakes a public interest investigation, the results of that investigation are not automatically covered by the lawyer-client privilege, HRE Rule 503, and professional rule of confidentiality, HRPC Rule 1.6, solely because the Department is acting on information it received from a state government official or entity. That is true even if the official or entity is one that may be represented by the Department under other circumstances. Although the Department is required by law to respond to requests for legal services from the legislature, the legislature has no statutory power to compel the Department to conduct a public interest investigation under HRS § 28-2.5; that power is exclusive to the governor and the attorney general.[19]

_____

[18] Under HRE Rule 502 (1980), a public entity has a privilege to refuse to disclose a report that it is required by law to make, as does a public officer or agency to whom a report is required by law to be made, if the law requiring it to be made so provides. No such privilege exists for reports that an entity is not required to make by law.

[19] The reservation of criminal investigatory powers to the executive branch is consistent with the separation of powers doctrine inherent in the Hawai'i Constitution, which "is intended to preclude a commingling of essentially different powers of government in the same hands and thereby prevent a situation where one department would be controlled by, or subjected, directly or indirectly, to, the coercive influence of either of the other departments." AlohaCare v. Dep't of Human Servs., 127 Hawai'i 76, 85, 276 P.3d 645, 654 (2012) (internal quotation marks and ellipses omitted)). The legislature has its own statutory investigatory powers to aid in its legislative functions. See HRS Chapter 21 (2009).

Nor does transmitting or communicating a document from the Department to the legislature necessarily establish the existence of a lawyer-client relationship.

Having reviewed the report at issue in this case in camera, we find that by providing it to the legislature, the Department was not necessarily rendering a legal service. The contents of the report itself are factual, implying that it was not intended to serve as legal advice, but rather as a summary of facts. There is no indication that the investigator who authored the report is a lawyer, although there is a relatively brief section summarizing some legal research which provides context for some of the facts. Most of the report consists of witness statements to the investigator, which are not generally covered by the lawyer-client privilege. See DiCenzo, 68 Haw. at 536-38, 723 P.2d at 176-77 (refusing to apply the privilege to statements to an insurance investigator). The report contains findings and conclusions, but they are factual, not legal. The report explains that the investigation began in response to information received from a legislator. The attached follow up report indicates that the main report was submitted to a legislator "for appropriate dissemination." It does not indicate the manner in which the report was submitted nor if any steps were taken to ensure the confidentiality of its

27

communication.  See DiCenzo, 68 Haw. at 536, 723 P.2d at 176 ("[T]he character of the communication . . . must be intended as confidential" for the lawyer-client privilege to apply).  The First Deputy Declaration states that "the Legislature request[ed] that the Department . . . provide a report to the Legislature" following its investigation into the Office of the Auditor.  Clearly a simple request for an investigation and a report does not necessarily constitute a request for legal service.

A document in the Department's custody is not made privileged and confidential by its communication to the legislature if that document was not believed or intended by either party to be legal advice.  See id.  The First Deputy Declaration claims that "[t]he report contains information which would reveal the communications between the Legislature and the Department, which are attorney client communications related to legal services provided by the Department to the Legislature" is cursory and entirely conclusory.  The Declaration contains no facts to suggest that the provision of the report was a lawyer-client communication.  Without evidence that the communication actually was for the purpose of providing legal services, the conclusion that it was a lawyer-client communication is unsupported.

However, our opinion should not be read to imply that an investigation undertaken by the Department can never constitute the provision of legal services by the Department to the legislature.  We find only that the Department failed to prove that legal services were being provided in this case.

In furtherance of its argument that the report was communicated in response to a request for legal services, the Department likens its administrative investigation to a corporate internal investigation.  The United States Supreme Court, in Upjohn Co. v. United States, held that communications made by a corporation's employees to the corporation's counsel in order to secure legal advice for the corporation were protected against compelled disclosure by the attorney-client privilege.  449 U.S. 383, 394-95 (1981).  The Department attempts to make an analogy to Upjohn, asserting that the Office of the Auditor is "an entity falling under the Legislature's authority," and even referring to the office as "the Office of the Legislative Auditor" (emphasis added).  But the relationship between the legislature and the auditor is more complex than the Department recognizes.  The state constitution gives the legislature the power to appoint and remove the auditor, but removal requires a two-thirds vote and cause.  Haw. Const. art. VII, § 10; cf. Humphrey's Exec'r v. United States, 295 U.S. 602,

29

629 (1935) (forbidding removal except for cause is one way to ensure agency independence). While the constitution requires the auditor to report the auditor's findings and recommendations to the legislature and to make reports and conduct investigations at the legislature's direction, it imposes other constitutional responsibilities on the auditor unconnected to the legislature. Id. (providing that the auditor shall conduct certain audits, certify the accuracy of financial statements, and report findings and recommendations to the governor). The constitutional role of the auditor is neither directly subordinate to, nor completely independent of, the legislature. An investigation of the Office of the Auditor conducted by the Department at the request of the legislature is not analogous to an investigation of a corporate subsidiary by the corporation's counsel at the request of the corporation's counsel. See Upjohn, 499 U.S. at 383.

The policies underlying HRE Rule 503 and HRCP Rule 1.6, the lawyer-client privilege and the professional rule forbidding disclosure of confidential communications, support our holding in this case. "The scope of any privilege is based upon policy considerations." Matsuura v. E.I. du Pont de Nemours & Co., 102 Hawai'i 149, 155, 73 P.3d 687, 693 (2003). Because the lawyer-client privilege "works to suppress otherwise

relevant evidence, the limitations which restrict the scope of its operation . . . must be assiduously heeded." Sapp, 62 Haw. at 38, 609 P.2d at 140. "[T]he privilege 'must be strictly limited to the purpose for which it exists.'" DiCenzo, 68 Haw. at 535, 723 P.2d at 175 (quoting Dike v. Dike, 448 P.2d 490, 496 (Wash. 1968)). The purpose of confidentiality in the lawyer-client relationship is to encourage clients or potential clients to communicate fully and frankly with legal counsel:

> A fundamental principle in the client-lawyer relationship is that, in the absence of the client's consent after consultation, the lawyer must not reveal information relating to the representation. . . . This contributes to the trust that is the hallmark of the client-lawyer relationship. The client is thereby encouraged to seek legal assistance and to communicate fully and frankly with the lawyer even as to embarrassing or legally damaging subject matter. The lawyer needs this information to represent the client effectively and, if necessary, to advise the client to refrain from wrongful conduct. Almost without exception, clients come to lawyers in order to determine their rights and what is, in the complex of laws and regulations, deemed to be legal and correct. Based upon experience, lawyers know that almost all clients follow the advice given, and the law is upheld.

HRPC Rule 1.6 cmt. 2. "The privilege is bottomed on assumptions that lawyers 'can act effectively only if they are fully advised of the facts by the parties they represent' and disclosure will be promoted 'if the client knows that what he tells his lawyer cannot be extorted from the lawyer.'" DiCenzo, 68 Haw. at 535, 723 P.2d at 175 (internal ellipses and brackets omitted) (quoting Edward W. Cleary, McCormick on Evidence § 87 (3d ed. 1984)). Furthermore, the professional rule of confidentiality

is not intended to prevent public disclosure of government misconduct that is harmful to the public good.  HRPC Rule 1.6(b)(5).

The conclusion that the Department failed to prove that it was acting within the context of a lawyer-client relationship when it prepared and communicated the investigative report is consistent with the purposes of the privilege.  When the legislator requested that the Department undertake an investigation of the Office of the Auditor, the legislator was not seeking advice regarding the legislator's own legal rights and liabilities, nor those of the legislature as a whole, and the legislator had no incentive to either withhold or disclose embarrassing or legally damaging subject matter because the information being shared did not relate to the legislator's own conduct.  The Department was not relying on the legislature to fully advise it of the facts.  Rather, information shared by the legislator formed the basis of a more fulsome investigation by the Department.

The UIPA must also "be applied and construed to promote its underlying purposes and policies[.]"  HRS § 92F-2. Our holding in this case promotes the underlying policies of the UIPA, particularly the policies of "promot[ing] the public interest in disclosure[,]"  HRS § 92F-2(1), and "enhanc[ing]

governmental accountability through a general policy of access to government records[.]" HRS § 92F-2(3).

The Department failed to meet its burden to prove that it was acting within a lawyer-client relationship when it prepared the report. Accordingly, it failed to prove that the report itself is covered by either the lawyer-client evidentiary privilege, HRE Rule 503, or the professional conduct rule of confidentiality, HRPC Rule 1.6. The circuit court therefore erred in granting summary judgment to the Department on the basis of its conclusion that HRS § 92F-13(4) protects the report from disclosure, and erred in denying Civil Beat's motion for summary judgment on the same issue.

## IV. CONCLUSION

In this case, the circuit court resolved the Department's motion for summary judgment and Civil Beat's cross-motion for summary judgment on the basis of its erroneous conclusion that the requested record was protected from disclosure under the UIPA by HRS § 92F-13(4). It did not address the two other disclosure exceptions asserted by the Department, HRS §§ 92F-13(1) and (3). We therefore vacate the circuit court's final judgment and its order granting the Department's motion for summary judgment and denying Civil Beat's cross motion for summary judgment and remand the case for

33

proceedings consistent with this opinion.  On remand, the circuit court shall consider whether disclosure of this record "would constitute a clearly unwarranted invasion of personal privacy[,]" HRS § 92F-13(1), and whether the record, "by [its] nature, must be confidential in order for the government to avoid the frustration of a legitimate government function[.]" HRS § 92F-13(3).[20]

| | |
|---|---|
| Robert Brian Black<br>for Petitioner | /s/ Mark E. Recktenwald |
| | /s/ Sabrina S. McKenna |
| Kaliko'onalani D. Fernandes<br>(Clyde J. Wadsworth with<br>her on the briefs) | /s/ Richard W. Pollack |
| For Respondent | /s/ Michael D. Wilson |
| | /s/ Paul B.K. Wong |



---

[20]    With regard to HRS § 92F-13(3), the circuit court should note that we recently held that the "deliberative process privilege" cited by the Department in its initial Notice to Requester "is clearly irreconcilable with the plain language and legislative history of Hawai'i's public record laws." Peer News, 143 Hawai'i at 475, 431 P.3d at 1248.