**\*\*\* FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER \*\*\***

**Electronically Filed
Supreme Court
SCAP-21-0000057
26-APR-2022
09:03 AM
Dkt. 17 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

HONOLULU CIVIL BEAT INC.,
Plaintiff-Appellant,

vs.

DEPARTMENT OF THE ATTORNEY GENERAL,
Defendant-Appellee.

SCAP-21-0000057

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CAAP-21-0000057; CASE NO. 1CC161001743)

APRIL 26, 2022

WILSON AND EDDINS, JJ., AND CIRCUIT JUDGE WONG, IN PLACE OF
NAKAYAMA, J., RECUSED; AND RECKTENWALD, C.J., CONCURRING IN PART
AND DISSENTING IN PART, WITH WHOM McKENNA, J., JOINS

OPINION OF THE COURT BY EDDINS, J.

In 2016, the Department of the Attorney General produced an

explosive 555-page report[1] documenting incompetence, deceptive

---

[1]     The Report itself contains 555 substantive pages and one blank page;
the Department of the Attorney General also prepared a seven page follow up
report.

practices, and workplace bullying in the Office of the Auditor (the Report).

Honolulu Civil Beat, an investigative news organization, has been trying to get its hands on a copy of that report for over five years.

We decide whether Hawaiʻi's public information law - the Uniform Information Practices Act (UIPA) - requires the State AG to release the Report to Civil Beat.

By and large, it does.  Though there are significant privacy interests in the Report as a "personnel-related" record, these interests are mostly outweighed by the public's overwhelming interest in the Report's disclosure.  There are summaries of formal personnel records, discussions of minor policy infractions, and remarks about medical information in the Report that are exempt from the UIPA's disclosure requirements. They may be redacted.  The names of rank-and-file employees of the Office of the Auditor and other interviewees may also be redacted.  But everything else is fair game for Civil Beat: a smattering of redactions within a government record cannot shield the entire thing from the UIPA's disclosure requirements.

## I.    BACKGROUND

In April 2015, the Hawaiʻi Legislature asked the Department of the Attorney General (the AG or State AG) to investigate the Office of the Auditor.  The legislature made this request after

receiving complaints about three high-ranking officials in the Office of the Auditor: Acting Auditor Jan Yamane, Deputy Auditor Rachel Hibbard, and General Counsel and Human Resources Manager Kathleen Racuya-Markrich (collectively the Subjects).

The State AG investigated. And it compiled a record of its investigation (the Investigation).

On April 27, 2016, a Civil Beat reporter emailed the State AG. He referenced the UIPA and asked for "access to or copies of all final investigative reports related to the state auditor's office from Jan. 1, 2015 to present."

The UIPA provides that "[a]ll government records are open to public inspection unless access is restricted or closed by law." Hawai'i Revised Statutes (HRS) § 92F-11(a) (2012). It also exempts several categories of records from this disclosure mandate. See HRS § 92F-13 (2012).

The State AG denied Civil Beat's request. It said the Report was exempt from the UIPA's disclosure requirement.

Civil Beat sued.

The parties cross-moved for summary judgment.

The circuit court granted the State AG's motion for summary judgment and denied Civil Beat's. The court said the Report was exempt from the UIPA because it was a confidential communication

3

between counsel (the State AG) and client (the legislature).[2]
Civil Beat appealed. On appeal, we reversed the circuit court.
See Honolulu Civil Beat Inc. v. Dep't of Attorney Gen. (Civil
Beat I), 146 Hawai'i 285, 463 P.3d 942 (2020). The Report might
have been prepared at the legislature's request. But the State
AG hadn't shown it prepared the Report in the context of an
attorney-client relationship. And, as a result, the Report was
not exempt from the UIPA's disclosure requirements. Id. at 298,
463 P.3d at 955.

The State AG's motion for summary judgment had raised two
additional bases for the Report's nondisclosure that were left
unaddressed by the circuit court's order. They were:

(1)   HRS § 92F-13(3) (the Frustration Exemption) (exempting
      from disclosure "[g]overnment records that, by their
      nature, must be confidential in order for the
      government to avoid the frustration of a legitimate
      government function"); and

(2)   HRS § 92F-13(1) (the Privacy Exemption) (exempting
      from disclosure "[g]overnment records which, if
      disclosed, would constitute a clearly unwarranted

---

[2]   The court reasoned that since the Report was covered by the statutory
attorney-client privilege, see Hawai'i Rules of Evidence Rule 503, it would be
shielded from the UIPA's disclosure requirements by HRS § 92F-13(4), which
exempts from UIPA disclosure government records that "pursuant to state or
federal law . . . are protected from disclosure." See also HRS § 626-1
(2016) (enacting the Hawai'i Rules of Evidence).

4

invasion of personal privacy").

We remanded the case. We instructed the circuit court to consider whether the Report was shielded from the UIPA's disclosure requirements by the Frustration or Privacy Exemptions. Id. at 299, 463 P.3d at 956.

On remand, the circuit court again granted summary judgment to the State AG. It held that the Report fell within both the Frustration and the Privacy Exemptions and was therefore exempt from the UIPA's disclosure requirements.

The court said the Report fell within the Frustration Exception because its disclosure would frustrate the State AG's "legitimate government function" of providing legal services to state agencies.

The court said the Report fell within the Privacy Exemption because its disclosure would "constitute a clearly unwarranted invasion of personal privacy." In reaching this conclusion, the circuit court found there were significant privacy interests in the Report because it was both "[i]nformation comprising a personal recommendation or evaluation," see HRS § 92F-14(b)(8) (2012 & Supp. 2015), and "[i]nformation in an agency's personnel file,"[3] see HRS § 92F-14(b)(4).

_____

[3]    The court said that: (1) the Subjects had a significant privacy interest in the Report as a personal recommendation or evaluation under HRS § 92F-14(b)(8); and (2) everyone named in the Report had a significant privacy interest in it as information in a personnel file under HRS § 92F-14(b)(4).

The circuit court also concluded that the Report should be totally withheld, rather than redacted, because the Report could not be "redacted in a fair manner which would give accurate meaning" to its contents.

Now, in this second appeal, Civil Beat says the circuit court got it wrong again. Civil Beat asks us to consider whether the circuit court erred by holding that the Report may be withheld from the public under (1) the Frustration Exemption; and (2) the Privacy Exemption. Civil Beat also asks us to consider (3) "[w]hether the circuit court erred by holding that the AG investigation report could not be disclosed in redacted form."

## II. DISCUSSION

Under the UIPA, "[a]ll government records are open to public inspection unless access is restricted or closed by law." HRS § 92F-11(a). But there are several statutory exemptions. See HRS § 92F-13. And if a record falls within one of these exemptions, the government doesn't have to disclose it. Id.

Two exemptions are at issue in this case: the Frustration Exemption (HRS § 92F-13(3)) and the Privacy Exemption (HRS § 92F-13(1)).

The UIPA "contains a strong presumption in favor of public disclosure of government records." Civil Beat I, 146 Hawai'i at 293, 463 P.3d at 950 (citing HRS §§ 92F-2 (2012), 92F-11(a)).

And its exemptions are "narrowly construed with all doubts resolved in favor of disclosure."  OIP Op. Ltr. No. 95-12 at 8 (May 8, 1995).

An agency relying on a UIPA exemption has the burden of showing that nondisclosure is justified.  HRS § 92F-15(c) (2012) ("The agency has the burden of proof to establish justification for nondisclosure.").

Here, the State AG has not met its burden of showing that the Report's nondisclosure is justified under either the Frustration Exemption or the Privacy Exemption.

## A.    The Frustration Exemption

The analysis under the Frustration Exemption – which exempts records "that, by their nature, must be confidential in order for the government to avoid the frustration of a legitimate government function" - is straightforward.  Both the trial court's post-remand order and the State AG's opening brief assert that the AG's ability *to provide legal services* will be frustrated by the Report's disclosure.  This assertion is incompatible with our holding in Civil Beat I.  See 146 Hawaiʻi at 295, 463 P.3d at 952 (holding, on the same record before us now, that the AG "failed to prove that it was acting in a lawyer-client relationship with the legislature with regard to [the Report]").  The record contains no explanation of how the Report's disclosure could possibly frustrate the State AG's

7

ability to provide legal services given that, per Civil Beat I, the Attorney General wasn't providing the State "legal services" when it investigated the Office of the Auditor or prepared the Report.[4]

The State AG has not advanced any other arguments about why the Report's release would frustrate a legitimate government function. The AG's burden of showing how the Report's release would frustrate a legitimate government function, see HRS § 92F-15(c), has not been met.[5] The Frustration Exemption, then, cannot justify the Report's nondisclosure.

## B.    The Privacy Exemption

The Privacy Exemption analysis is more complicated.

The Privacy Exemption applies to "[g]overnment records which, if disclosed, would constitute a clearly unwarranted invasion of personal privacy." HRS § 92F-13(1). Under HRS

---

[4]    Our ruling will have no impact on the protections afforded to records the State AG can show are confidential lawyer-client communications. The Attorney General contends that its ability to provide state agencies legal services would be handicapped by the Report's disclosure. But this contention is nonsensical. Anytime the State AG conducts an investigation while providing legal services to a state agency, it may accurately tell its interlocutors that their responses would be confidential. Government agencies, likewise, may continue to request legal services from the State AG with full confidence that confidential attorney-client communications will be shielded from UIPA disclosure. See Civil Beat I, 146 Hawai'i at 293-95, 463 P.3d at 950-52.

[5]    See Peer News LLC v. City & County of Honolulu (Peer News II), 143 Hawai'i 472, 487, 431 P.3d 1245, 1260 (2018) (stating that an agency seeking to withhold a record under the Frustration Exemption must "demonstrate a connection between disclosure of the specific record and the likely frustration of a legitimate government function, including by clearly describing the particular frustration and providing concrete information indicating that the identified outcome is the likely result of disclosure").

§ 92F-14(a), "[d]isclosure of a government record shall not constitute a clearly unwarranted invasion of personal privacy if the public interest in disclosure outweighs the privacy interest of the individual."

A two-part test governs our determination of whether a given record's disclosure would "constitute a clearly unwarranted invasion of personal privacy."

First, the court decides whether there is a "significant privacy interest rooted in statute or the constitution." See Org. of Police Officers v. City & Cty. of Honolulu, 149 Hawaiʻi 492, 504, 494 P.3d 1225, 1237 (2021).

If the court finds a constitutionally or statutorily "significant" privacy interest, it balances that interest against the public's interest in disclosure. If the significant privacy interest is stronger than the public's interest in disclosure, the record's disclosure constitutes "a clearly unwarranted invasion of personal privacy" and the record falls within the Privacy Exemption. If, however, the public's interest in disclosure is stronger than the privacy interests at issue, the record is not exempt and must be disclosed. See id. at 516, 494 P.3d at 1249.

The analysis is easier if there's no "significant privacy interest rooted in statute or the constitution;" in that case, even "a scintilla of public interest in disclosure will preclude

a finding of a clearly unwarranted invasion of personal privacy." Id. at 504, 494 P.3d at 1237 (cleaned up).

### 1. The Report, as a whole, does not fall within the Privacy Exemption

The circuit court held that everyone named in the Report has a significant privacy interest in it under HRS § 92F-14(b)(4), which recognizes a significant privacy interest in "[i]nformation in an agency's personnel file."[6] It also held that those privacy interests outweigh the public's interest in the Report's disclosure and that, therefore, the Report is covered by the Privacy Exemption.

We agree with the circuit court that there are significant privacy interests in the Report under HRS § 92F-14(b)(4): the Report, as a whole, is a "personnel-related" record in which its Subjects have significant privacy interests under HRS § 92F-14(b)(4). But, we hold that because the Subjects' significant privacy interests in the Report as personnel-related information are outweighed by the public's interest in disclosure, the

---

[6] The circuit court also found that Yamane and her managerial staff had significant privacy interests in the Report under HRS § 92F-14(b)(8), which recognizes a significant privacy interest in "[i]nformation comprising a personal recommendation or evaluation." We disagree. The State AG prepared the Report to document its investigation *into the veracity of a particular set of personnel-related allegations*. This provenance is way different than that of most workplace "personal evaluations" or performance reviews. And the Report explores themes and subject matter that would be out of place in an individual "personal evaluation." Because the Report is not a "personal recommendation or evaluation," there are no significant privacy interests in it under HRS § 92F-14(b)(8).

Report, as a whole, is not covered by the Privacy Exemption.

### a. Defining the Scope of the Significant Privacy Interest Recognized by HRS § 92F-14(b)(4)

HRS § 92F-14(b)(4) creates a "significant privacy interest" in "[i]nformation in an agency's personnel file."[7]

This privacy interest extends to information that, though not *physically* located in any agency's personnel files, is, in essence, a personnel record. See OIP Op. Ltr. No. 98-05 at 20 (Nov. 24, 1998) (concluding that an administrative investigation

---

[7]     The significant privacy interest in personnel-related information found in HRS § 92F-14(b)(4) is one of ten examples of significant privacy interests enumerated in HRS § 92F-14(b).  But this list of examples is not exhaustive.

The UIPA implements article I, section 6 of the Hawaiʻi Constitution. See Org. of Police Officers, 149 Hawaii at 510, 494 P.3d at 1243 (describing UIPA as a law implementing article I, section 6).  Under article I, section 6, "[t]he right of the people to privacy is recognized and shall not be infringed without the showing of a compelling state interest."  We have held that "the privacy right protected by the 'informational privacy' prong of article I, section 6 is the right to keep confidential information which is 'highly personal and intimate.'"  State of Hawaiʻi Org. of Police Officers (SHOPO) v. Soc'y of Prof'l Journalists-Univ. of Hawaiʻi Chapter, 83 Hawaiʻi 378, 398, 927 P.2d 386, 406 (1996)).  As the court in SHOPO recognized, "highly personal and intimate information" is analogous to that implicated by the invasion of privacy tort, which encompasses information about "[s]exual relations," "family quarrels, many unpleasant or disgraceful or humiliating illnesses, most intimate personal letters, most details of a [person's] life in [their] home, and some of [their] past history that [they] would rather forget."  Id. (citing Restatement (Second) of Torts § 652D cmt. B (Am. Law Inst. 1977)).

Because of the constitutionally significant privacy interest in "highly intimate and personal" information, HRS § 92F-14(b)'s list of "examples" of significant privacy interests is not exhaustive.  HRS § 92F-14(b) does not recognize information about, for example, family quarrels, as a category in which individuals have a significant privacy interest.  But individuals nonetheless have a significant privacy interest in information about their family quarrels because of article I, section 6's protections.  The fact that HRS § 92F-14(b) contains "examples" of information in which a person has a "significant" privacy interest thus does not imply that a court may *create* statutorily significant privacy interests beyond those recognized by HRS § 92F-14(b).  It merely reflects the legislature's recognition that it is this court's job to determine the scope of the constitutional right to informational privacy.

report kept outside an employee's personnel file is "akin to the information maintained in a personnel file" in part because "[a]n administrative investigation report often is the only investigation with regard to personnel action and discipline, and it provides the basis for any personnel action taken"); OIP Op. Ltr. No. 95-7 (March 28, 1995). Thus, in the UIPA context, the term "personnel-related information" refers to information that, regardless of its physical location, is akin to that maintained by an agency in its personnel files.

In considering the proper scope of the significant privacy interest created by HRS § 92F-14(b)(4), it is helpful to keep in mind that the noun "personnel" has two meanings. It means "[t]he department of human resources in an organization;" and it may also refer to "[t]he people employed by or active in an organization, business, or service." See Personnel, The American Heritage Dictionary (5th ed. 2015).

When HRS § 92F-14(b)(4) refers to "information in an agency's personnel file," it is talking about information in files maintained by the agency's human resources department, and not about all information in any way related to "[t]he people employed by or active in an organization, business, or service." By extension, when we recognize a significant privacy interest in "personnel-related information," we are describing a significant privacy interest in information related, or similar,

to that you would find in the files of a human resources

department.[8]

_____

[8]     The dissent, in contrast, advocates a definition of "information in an agency's personnel file" that operationalizes personnel's *other* meaning.  In the dissent's account, if information has any connection to the "everyday work activities" of State employees, then those employees have a significant privacy interest in it.  See dissent at 9 ("UIPA's text recognizes that State employees retain a significant privacy interest in their everyday work activities . . . .")

There are major problems with this approach.

First, and most fundamentally, it is at odds with the plain text of HRS § 92F-14(b)(4), which uses "personnel" to refer to an agency's human resources department and not as a synonym for "employees."  HRS § 92F-14(b)(4) recognizes a significant privacy interest in "[i]nformation in an agency's personnel file, or applications, nominations, recommendations, or proposals for public employment or appointment to a governmental position."  Personnel files, job applications, nominations, and proposals for public employment are all things you would find in an agency's HR files.  Nothing in the plain text of this provision suggests the legislature is using "information in an agency's personnel file" to refer to all information about the day-to-day work of an agency's personnel.

Second, it makes no sense given the common understanding of the term "personnel file," which refers to a file that both: (1) is specific to a particular person; and (2) contains a relatively narrow range of documents that are used to identify, and make employment decisions about, the particular employee they describe.  See Dep't of Air Force v. Rose, 425 U.S. 352, 377 (1976) (describing personnel files as containing personal data about, for example where someone was born, the names of their parents, their address history, and their educational records); see also Elkin Tribune, Inc. v. Yadkin Cty. Bd. of Cty. Comm'rs, 417 S.E.2d 465, 466 (N.C. 1992) (observing that statutory definition of personnel file as "consist[ing] of any information in any form gathered by the [employer] with respect to that employee and, by way of illustration but not limitation, relating to his [or her] application, selection or nonselection, performance, promotions, demotions, transfers, suspension and other disciplinary actions, evaluation forms, leave, salary, and termination of employment" comports with common understanding of term "personnel file" (emphases added)); Oregonian Publ'g Co. v. Portland Sch. Dist. No. 1J, 987 P.2d 480, 484 (Or. 1999) (en banc) (observing that "'personnel files' would usually include information about [an employee's] education and qualifications for employment, job performance, evaluations, disciplinary matters or other information useful in making employment decisions regarding an employee").

Third, it is difficult to square with other examples in HRS § 92F-14(b), which recognize significant privacy interests in discrete and relatively narrow categories of information like "[i]nformation comprising a personal recommendation or evaluation" and "[i]nformation relating to eligibility for social services or welfare benefits or to the determination of benefit levels."  These are not sweeping genres akin to information about

  **b.** **The Report is "personnel-related information" in which the Subjects alone have a significant privacy interest under HRS § 92F-14(b)(4)**

The circuit court held that everyone named in the Report has a significant privacy in it under HRS § 92F-14(b)(4). We disagree. Only the Subjects have a significant privacy interest in the Report as a whole.

The analysis as to whether any particular individual has a "significant" privacy interest in a record requires more than a finding that the person is referenced in the record and that the record, as a whole, contains information covered by article I, section 6 or one of HRS § 92F-14(b)'s examples. A record implicates a person's significant privacy interests when it contains particular types of information about them. A person's privacy interest does not turn on the nature of the record as a whole. Cf. Rose, 425 U.S. at 374 (recognizing that courts deciding FOIA challenges must "look beneath the label on a file or record when the withholding of information is challenged" (cleaned up)). It turns, rather, on whether a record's information about them implicates their personal significant privacy interests.

_____

government employees' "everyday work activities." See dissent at 9. There is no reason to think that the legislature - in recognizing a significant privacy interest in "[i]nformation in an agency's personnel file" - intended to bestow information about state workers' lunchtime habits and collegial dynamics with the same level of protection afforded to social security numbers and medical records.

This analysis makes intuitive sense in the context of personnel files, which, by their nature, concern a particular person.  See Milner v. Dep't of Navy, 562 U.S. 562, 570 (2011) (explaining that "the common and congressional meaning of 'personnel file' is the file showing, for example, where an employee was born, the names of his parents, where he has lived from time to time, his school records, results of examinations, and evaluations of his work performance" (cleaned up) (citing Rose, 425 U.S., at 377)); see also Rose, 425 U.S. at 376 (citing a House Report that describes FOIA's exemption for personnel files as "intended to cover detailed Government records on an individual which can be identified as applying to that individual" (emphases added) (cleaned up)).

Here, the Report is a personnel-related record in which not just one person, but three people (the Subjects), have a significant privacy interest under HRS § 92F-14(b)(4).

As a preliminary matter, there are two reasons why the Report is "personnel-related information," by which we mean the type of information you would expect to find in files maintained by an agency's personnel department.

First, the Report documents an investigation launched in response to complaints from Office of the Auditor employees concerning, among other things, harassment and a hostile work environment at the Office of the Auditor.  These are *classic*

15

human resources concerns.  And the Investigation – with its employee interviews, three Subjects, and review of personnel policies and procedures, training records, and staff assignments – is a *classic* HR investigation.

Second, the State AG initiated the Investigation at the request of the legislature, which can hire and fire the auditor.  And following the Investigation, the AG gave the Report to the legislature so that it could determine "what action needed to be taken if any" in response to the Report's findings.  The relationship between the legislature and the auditor isn't that of a typical "employer" and "employee."  See Civil Beat I, 146 Hawai'i at 297, 463 P.3d at 954 (describing the auditor's constitutional role in relationship to the legislature).  But the fact that a unit of government with power over the auditor requested and directed the Investigation weighs in favor of treating the Report as "personnel-related information" in which there may be significant privacy interests under HRS § 92F-14(b)(4).

So the Report is a personnel-related record.  But whose?

The Investigation was launched in response to complaints about the Subjects, in particular.  And the Report's scope and contents foreground the Subjects, in particular.  Though there's no evidence the Office of the Auditor maintained the Report in Yamane, Hibbard, or Racuya-Markrich's personnel files, the

16

Report would not be out of place there.  It is, as a whole, a document of the sort an employer might use in making employment decisions about the Subjects.  Cf. Wakefield Teachers Ass'n v. Sch. Comm. of Wakefield, 731 N.E.2d 63, 67 (Mass. 2000) (describing the "core categories of personnel information" as "useful in making employment decisions" about a particular employee (cleaned up)).  Thus, with respect to each of the three Subjects, the Report, as a whole, is personnel-related information.  So all three of the Subjects (who, as their moniker implies, are the Report's *subjects*) have a significant privacy interest in the Report under HRS § 92F-14(b)(4).

The Report does mention Office of the Auditor workers other than the Subjects.[9]  But these folks are not its focus.  The Report was not drafted because of them; it does not focus on them; and, with limited exceptions, see infra sections

---

[9]    Some of the Office of the Auditor employees mentioned in the Report received assurance of confidentiality from the State AG.  But this fact does not impact our analysis of *whether* these interviewees have significant privacy interests in the Report.  The State AG cannot override the UIPA's disclosure requirements by promising interviewees confidentiality.  As we explained in SHOPO, "the virtually unanimous weight of authority holds that an agreement of confidentiality cannot take precedence over a statute mandating disclosure."  SHOPO, 83 Hawai'i at 405-06, 927 P.2d at 413-14.  See also Washington Post Co. v. U.S. Dept. of Health and Human Servs., 690 F.2d 252, 263 (D.C. Cir. 1982) ("[T]o allow the government to make documents exempt by the simple means of promising confidentiality would subvert FOIA's disclosure mandate."); OIP Op. Ltr. No. 01-04 at 7 (Oct. 29, 2001) ("[A]gencies should not make blanket assurances of confidentiality. Investigators should always ensure that any such promises they make are appropriate, because if they are made in violation of the UIPA, witness identities and their statements would be subject to disclosure.").

17

II(B)(2)(a) & (b), it does not contain information of the sort the Office of the Auditor would use in employment-related decisions *about them*. The Report, with its hundreds of pages about the Subjects, would be *out of place* in any one of the non-Subjects' personnel files. So the Report is not these employees' personnel-related information.[10] And, by extension, they do not have a significant privacy interest in the Report

---

[10] Nothing in HRS § 92F-14(b)(4)(B) suggests that *all* information concerning workplace investigations is necessarily the "personnel-related information" of every single participant in those investigations. The dissent's contention to the contrary rests on a misreading of HRS § 92F-14(b)(4)(B).

HRS § 92F-14(b)(4) recognizes a significant privacy interest in "[i]nformation in an agency's personnel file." Subsection (B) contains an exception to that general rule. It outlines limited circumstances in which there is no significant privacy interest in five types of information concerning "employment misconduct that results in an employee's suspension or discharge."

The dissent takes this very narrow exception and argues that it stands for the general propositions that: (1) the UIPA "specifically provides for individual privacy interests" in employment-misconduct investigations; and (2) every employee named in a document describing a workplace misconduct investigation has a significant privacy interest in that document. See dissent at 13 (discussing HRS § 92F-14(b)(4)(B) and claiming that "in addition to protecting personnel-related information in general, UIPA specifically provides for individual privacy interests in employment-misconduct investigations" and that through HRS § 92F-14(b)(4)(B) the legislature "recognized within UIPA's text that employment investigations touch on sensitive areas implicating significant privacy interests for both subjects and witnesses").

Neither of these contentions has any merit. And neither draws any support from HRS § 92F-14(b)(4)(B). HRS § 92F-14(b)(4)(B) indicates that, unsurprisingly, the legislature anticipated that government agencies' personnel files would sometimes contain information about employee misconduct. But that doesn't mean all information in any way connected to a workplace misconduct investigation is automatically "personnel-related information." And it definitely doesn't support the conclusion that *everyone* named in a report describing workplace misconduct has a significant privacy interest in it.

under HRS § 92F-14(b)(4).[11,12,13]

---

[11]    The dissent justifies its conclusion that the Report is the non-Subjects' personnel-related information by arguing that these interviewees *ought* to have a significant privacy interest in the Report.  The dissent says it's not fair the UIPA gives the Subjects — who were accused of misconduct — a "significant" privacy interest in the Report while denying the same to the non-Subjects, who did nothing wrong.  See dissent at 12.  This argument is intuitively appealing, but the dissent's engagement with this normative question is not appropriate: it is the legislature's job, not ours, to weigh policy considerations and determine the scope of the Privacy Exemption.  See Peer News II, 143 Hawaiʻi at 489, 431 P.3d at 1262; State v. Smith, 103 Hawaiʻi 228, 233, 81 P.3d 408, 413 (2003).

[12]    The dissent says that OIP Opinion Letter Number 98-05 supports its contention that everyone named in the Report has a significant privacy interest in it as a personnel-related record.  It does not.  That opinion letter – which dealt with an administrative investigation, not a criminal one — *did not consider at all* the issue before us now: whether the witnesses in an administrative investigation have a significant privacy interest in that investigation as personnel-related information.  In fact, Opinion Letter Number 98-05 directly undermines the dissent's claim that witnesses in an administrative investigation have a significant privacy interest in it under HRS § 92F-14(b)(4).  In Opinion Letter Number 98-05, the OIP *presumed* that only the subject of an administrative investigation could have a significant privacy interest in it as personnel-related information.  See OIP Op. Ltr. No. 98-05 at 20-21 (separately analyzing whether the subject employee of an investigative report has a significant privacy interest in it as personnel-related information and concluding that "[w]hen there is no discharge resulting from employee misconduct, the subject employee has a significant privacy interest in the information contained in [an investigative affairs report about the misconduct]" (emphasis added)).  OIP Opinion Letter Number 98-05 addressed the question of whether the subject of an administrative investigation report could have a significant privacy interest in it as personnel-related information.  But it didn't bother with the question of whether complainants and witnesses could have a "personnel-information" significant privacy interest in the same report.  Because it was obvious they could not.

Opinion Letter Number 98-05 did find that witnesses in administrative investigations have a significant privacy interest in information about their identity within internal affairs reports.  See id. at 19.  But nothing about that limited conclusion supports the dissent's contention that the non-Subjects have significant privacy interest in everything within the Report.

[13]    Our holding that the non-Subjects named in the Report do not have a significant privacy interest in it under HRS § 92F-14(b)(4) is limited and technical.  We are not holding that the non-Subjects' privacy interests in the Report are unimportant, insignificant, or trivial.  We are simply holding that those privacy interests are not the sort of privacy interests recognized by HRS § 92F-14(b)(4) as "significant."

  **c.** **The public has a strong interest in the Report's full disclosure**

The Report's full disclosure would advance three distinct public interests.

First, the public's interest in assessing how the Office of the Auditor carries out its official duties.  See OIP Op. Ltr. No. 90-17, at 7 (April 24, 1990) (Recognizing that the UIPA reflects citizens' right to know "what their government is up to" (quoting U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press, 489 U.S. 749, 773 (1989))).  The Report's release would advance this public interest by "shed[ding] light upon the workings of government."  See OIP Op. Ltr. No. 04-07 at 7 (Mar. 25, 2004).

Second, the public's interest – distinct from its general interest in oversight of government operations - in "monitoring the conduct of individual government employees or officials." Peer News LLC v. City & County of Honolulu (Peer News I), 138 Hawaiʻi 53, 79, 376 P.3d 1, 27 (2016) (Pollack, J., concurring). The Report's release would advance this interest by allowing the public to assess whether the Subjects conscientiously and ethically carried out their respective duties while working in the Office of the Auditor.

Third, the public's interest in assessing the manner in which the government investigates complaints and allegations of

wrongdoing.  As we explained in <u>Organization of Police Officers</u>:

> The public's interest extends to those investigating
> misconduct and those accused of misconduct: the public
> should be assured that both the activity of public
> employees suspected of wrongdoing and the conduct of those
> public employees who investigate the suspects is open to
> public scrutiny.

149 Hawaiʻi at 516, 494 P.3d at 1249 (cleaned up).  The Report's

release would advance this interest by allowing the public to

understand how the State AG conceptualized and executed the

Investigation.

**d.    The public's interest in the Report's disclosure outweighs the Subjects' and non-Subjects' privacy interests in the Report as a whole**

Because the Subjects have <u>significant</u> privacy interests in

the Report as a whole under HRS Section 92F-14(b)(4), our

determination as to whether the State AG may withhold the whole

Report under the Privacy Exemption hinges on whether the

public's interest in the Report's disclosure outweighs those

interests.  <u>See</u> HRS § 92F-14(a).  (Since the non-Subjects'

privacy interests in the Report *as a whole* are not statutorily

or constitutionally significant, they are not subject to HRS

Section 92F-14(a) balancing.)

The HRS Section 92F-14(a) balancing test is context-

specific; no multi-factor test could anticipate every

potentially-relevant consideration.  That said, certain dynamics

are routinely at issue when a government employee's significant

privacy interests in a record are balanced against the public's

21

interest in the same record's disclosure.  The OIP has identified five factors relevant to HRS Section 92F-14(a) balancing.  They are:

> (1) the government employee's rank;
>
> (2) the "[d]egree of wrongdoing and strength of evidence against the employee";
>
> (3) whether there are other ways to obtain the information;
>
> (4) "[w]hether the information sought sheds light on a government activity"; and
>
> (5) "[w]hether the information is related to job function, or is of a personal nature."

See OIP Op. Ltr. No. 10-03 at 6-7 (Oct. 5, 2010).

These non-exclusive factors are a nice starting point for HRS Section 92F-14(a) balancing.[14]  And here, each factor supports the Report's disclosure.

The Subjects - Acting Auditor Jan Yamane, Deputy Auditor Rachel Hibbard, and General Counsel and HR Manager Kathleen Racuya-Markrich - were the Office of the Auditor's top brass, not line auditors or administrative staff.

And the Report is damning: it provides strong evidence of unethical and unprofessional conduct in the Office of the Auditor.  The Report contains information about: (1) the Office

---

[14]    As we explained in Organization of Police Officers, these factors "might be useful or relevant depending on the circumstances of the individual case" but "they are neither necessary nor dispositive."  149 Hawai'i at 517, 494 P.3d at 1250.

of the Auditor's exaggeration and sensationalizing of its findings; (2) the Office of the Auditor's fabrication of findings about auditee agencies; (3) the inexperience and incompetence of the Office of the Auditor's leadership; (4) the Office of the Auditor's alleged failure to complete an audit it was required, by law, to complete; (5) the Office of the Auditor's efforts to artificially inflate the number of audit reports it produced; and (6) the toxic workplace at the Office of the Auditor.

The third factor examines "whether the government is the only means for obtaining the desired information." OIP Op. Ltr. No. 10-03 at 7. The government is Civil Beat's only option for getting the Report. This factor supports disclosure.

The fourth factor also favors the Report's disclosure. The Report spotlights the workings of the Office of the Auditor. In Peer News I, we recognized that "'the appropriate concern of the public as to the proper performance of public duty is to be given great weight' when balanced against competing privacy interests." 138 Hawai'i at 73, 376 P.3d at 21 (quoting SHOPO, 83 Hawai'i at 399, 927 P.2d at 407).

Fifth, none of the information in the Report concerns the Subjects' personal affairs. All of it in some way connects to their official work in the Office of the Auditor. The Report contains some colorful descriptions of the work environment at

the Office of the Auditor.  But this is largely a function of the manner in which the State AG conducted the Investigation.  The AG's investigator would ask interviewees if they had heard about various incidents of harassment within the Office of the Auditor.  It is unsurprising that some of the responses he got contained commentary on colleagues' interpersonal dynamics.  *Nothing* in the Report is purely personal, though: there's no "gossip" about the Subjects' (or anyone else's) personal lives, just candid descriptions of a toxic workplace environment.  Because the information in the Report relates to the Subjects' job functions, not their personal affairs, this factor favors the public's interest in disclosure.

The datedness of the record is also relevant to HRS § 92F-14(a) balancing.  Here, the Report dates to spring 2016 and it describes an investigation that happened about six years ago, in 2015 and early 2016.  The record's age cuts both ways.  The Subjects' "significant privacy interests" in the Report have waned over time.  See McDonnell v. United States, 4 F.3d 1227, 1256 (3d Cir. 1993) (recognizing that individuals' privacy interests may become "diluted by the passage of time").  At the same time, the public's interest in the Report's disclosure – though still substantial - is lower than it would be if Yamane were still Acting Auditor.  Cf. Peer News I, 138 Hawai'i at 82, 376 P.3d at 30 (Pollack, J., concurring) (recognizing that

public interest in holding a police officer accountable for his conduct "may be significantly diminished if the officer is retired, was subsequently acquitted of the conduct, or is no longer serving as an armed officer").  On balance, the Report's age supports disclosure.

A final factor that informs our analysis is the Office of the Auditor's importance: this highly-visible and constitutionally-established office is a first line of defense against government inefficiency - or worse.  See Hawaii Constitutional Convention Studies, Article VI: Taxation and Finance, Legislative Reference Bureau, at 70-78 (June 1978). The critical role the Office of the Auditor plays in promoting trust and confidence in government enhances the public's interest in the Report.

We conclude that the State AG has not met its burden of showing that the Privacy Exemption wholesale shields the Report from disclosure: the public's interests in the Report's disclosure outweigh the Subjects' significant privacy interests in the Report as a personnel-related record.  And because there is more than a "scintilla" of public interest in the Report's disclosure, the non-Subjects' non-significant privacy interests in information within the Report are also eclipsed.

2. **Four categories of information within the Report come within the Privacy Exemption**

The fact that the Report is not wholesale shielded from disclosure by the Privacy Exemption, does not mean that none of the information within it is covered by the Privacy Exemption. We must consider each subset of information within the Report to determine whether its release would result in a clearly unwarranted invasion of personal privacy. Cf. Mead Data Cent., Inc. v. U.S. Dep't of the Air Force, 566 F.2d 242, 261 n.55 (D.C. Cir. 1977) (observing that "the focus of the FOIA is information, not documents as a whole").

There are four categories of information in the Report that, if disclosed, would "constitute a clearly unwarranted invasion of personal privacy." They are: (1) summaries of the Office of the Auditor's personnel records; (2) findings and discussions concerning minor policy infractions committed by non-Subjects; (3) the names of interviewees and Office of the Auditor employees mentioned in the Report; and (4) information about individuals' medical conditions. These four categories of information fall within the Privacy Exemption and may be redacted from the Report.

a. **Summaries of the Office of the Auditor's personnel files fall within the Privacy Exemption**

As part of the Investigation, the State AG reviewed records maintained in the Office of the Auditor's personnel files. The

Report summarizes some of these records.  For example, it describes in depth a demotion letter and several *formal* performance appraisals.

HRS § 92F-14(b)(4) does not confer a significant privacy interest in every offhanded reference to a personnel record or matter.  Yet those whose personnel records are reviewed in detail by the Report do have a significant privacy interest in those summaries, just as they would in the records themselves.

The public's interest in these summaries is, in contrast, low.  They may shed light on certain government workers' performance, but they add little to the Report's description of the Office of the Auditor, at large.

The public's minimal interest in the Report's summaries of personnel records is outweighed by the Office of the Auditor employees' significant privacy interests in those discussions. The Report's summaries of formal personnel records are therefore exempt from the UIPA's disclosure requirements under HRS § 92F-13(1).

### b. Findings and discussions exclusively concerned with minor misconduct by non-Subjects

The Report contains two findings concerning minor misconduct by a non-Subject.  And there are scattered sentences within the Report that <u>exclusively</u> concern non-Subjects' compliance, or lack thereof, with various Office of the Auditor

polices. (For example, the leave and computer use policies.) These lines are diffuse throughout the Report. But collectively they, and the two findings referenced above, are, "akin to the information maintained in a personnel file."[15] See OIP Op. Ltr. No. 98-05 at 20. So the non-Subjects whose compliance or non-compliance with workplace policies is addressed in the Report have a significant privacy interest in those discussions and findings under HRS § 92F-14(b)(4).[16]

The public's interest in learning about minor policy violations committed by low-ranking Office of the Auditor employees over six years ago is low. So even though this information does concern public employees' performance of their official duties, the public's interest in its disclosure does not outweigh the non-Subjects' significant privacy interests in the information. Thus, to the limited extent the Report contains findings and discussions that are exclusively concerned with non-Subjects' policy infractions, that information is exempt from the UIPA's disclosure requirements under HRS § 92F-

---

[15] Formal summaries describing an employee's compliance or non-compliance with written workplace policies – unlike lengthy qualitative accounts of office grudges or written descriptions of employees' routine interactions and relative popularity – are the type of documents one would expect to find in the files of an agency's personnel department.

[16] This privacy interest encompasses only information directly and exclusively concerned with the issue of an individual's compliance or non-compliance with an established workplace policy. Non-Subjects do not have significant privacy interests in, for example, discussions about the Subjects' uneven or unfair implementation of those policies.

13(1).

### c. Interviewees' names – but not Subjects' - fall within the Privacy Exemption

The public does not gain better insight into the workings of the Office of the Auditor by learning the identities of those interviewed or mentioned in the Report: it lacks even a trace of interest in this information. See OIP Op. Ltr. No. 98-05 at 18 ("[T]here is little or no public interest in the disclosure of the information which identifies witnesses and complainants."); OIP Op. Ltr. No. 10-03 at 5 ("[T]he public interest in shedding light on the agency's operations is generally served by disclosure of the nature of alleged misconduct and how the agency responded to it, without the name of the concerned employee and other details that could reasonably lead to the employee's identification."); Cf. Albuquerque Publ'g Co. v. U.S. Dep't of Justice, 726 F.Supp. 851, 856 (D.D.C. 1989) (observing that the names of third parties associated with Drug Enforcement Administration investigation are "irrelevant" to question of how DEA conducts its investigations).

The public has no interest in knowing the identities of those interviewed and mentioned in the Report. So even though the non-Subjects do not have a significant privacy interest in

the Report as a whole, the disclosure of their names[17] would be a clearly unwarranted invasion of privacy.[18]

The same is not true with respect to the Subjects' names: the public's interest in monitoring the conduct of the Office of the Auditor's managerial staff outweighs any privacy interests the Subjects may have in the non-disclosure of their identities. See Peer News I, 138 Hawai'i at 80, 376 P.3d at 28 (Pollack, J., concurring) (quoting OIP Op. Ltr. No. 98-05 at 21 for the proposition that "[c]ourts have identified the public interest in disclosure of the identities of employees as one which lies in holding those public officials accountable for their conduct"). The Subjects' names, then, are not shielded from

---

[17] The Report also contains information such as job titles and references to individuals' professional history that – though not as directly identifying as a name – might still enable those intimately familiar with the inner workings of the Office of the Auditor in the mid-2010s to connect the dots on who's who even with the redactions. This information is "identifying information." See Rose, 425 U.S. at 380 (stating that "what constitutes identifying information . . . must be weighed . . . from the vantage of those who would have been familiar" with the matter). And in many cases involving "significant" privacy interests, its disclosure could "constitute a clearly unwarranted invasion of personal privacy." But that is not the case here. While the public has no interest in knowing interviewees' identities, it *does* have a cognizable interest in helpful contextualizing information about interviewees' positions. Because of this public interest in the identifying information and the non-Subject employees' lack of a significant privacy right in it, the disclosure of this information would not constitute a clearly unwarranted invasion of personal privacy.

[18] Because there is not a trace of public interest in knowing the non-Subjects' names, our conclusion that these names should be redacted is fully consistent with our holding that the non-Subjects do not have a significant privacy interest in the Report. See Org. of Police Officers, 149 Hawai'i at 504, 494 P.3d at 1237 (explaining that information in which there is zero public interest may fall within the Privacy Exemption even if there are no significant privacy interests in it). The dissent's contention to the contrary, see dissent at 18 n.7, is puzzling.

UIPA disclosure by the Privacy Exemption.

> **d.    The Report's discussions of individuals' medical conditions, disabilities, and bodies fall within the Privacy Exemption**

The Report documents several allegations of harassment or adverse treatment based on perceived disability or sickness. These references are information "relating to [a] medical . . . condition."  See HRS § 92F-14(b)(1).  Under HRS Section 92F-14(b)(1), this category of information is one in which individuals may have a significant privacy interest.

An individual's privacy interest in, for example, a colleague's vague reference to "medical issues" may be lower than their interest in more clinical health information.  But the individuals whose disabilities, health, and bodies are discussed – even in passing – by the Report have a "significant privacy interest" in those discussions.

The public interest in learning about the few allegations in the Report concerning medical conditions is very low.  This information doesn't shed light on a government activity.  And it implicates personal, rather than professional concerns.

Given these considerations, significant privacy interests outweigh the public's interest in the disclosure of information concerning health, disability, and body size.  Disclosing this information would be a "clearly unwarranted invasion of personal privacy."  See HRS § 92F-13(1).  This small subset of

information in the Report that relates to individuals' medical conditions is thus exempt from the UIPA's disclosure requirements.  See id.

**C.    The Report should be redacted, not withheld**

The Attorney General contends that because it would be impossible to segregate disclosable from non-disclosable information in the Report, redaction will not do.  The entire Report must be withheld.

The redactions allowed by this opinion are narrow.  But even if they were far more widespread, they would not justify the Report's nondisclosure.

The UIPA is intended to, among other things, "[p]rovide for accurate, relevant, timely, and complete government records" and "[e]nhance governmental accountability through a general policy of access to government records."  HRS §§ 92F-2(2), (3).  These aims would be undercut if the presence of redactable information within a record could justify its total nondisclosure.  When some, but not all, of a record is exempt from UIPA disclosure, the record may be entirely withheld only if the permissible redactions are so extensive that what's left is an incomprehensible mishmash of blacked-out paragraphs, scattered words, and punctuation.  If the unredactable material within a given record conveys information, it must be disclosed.

Here, the information within the Report concerning

individuals' names, personnel records, and medical conditions can be "readily detected and redacted from the [Report] without rendering the remaining [Report] information meaningless." See OIP Op. Ltr. No. 09-02 at 5 (Sept. 9, 2009). These redactions thus do not provide any basis for withholding everything else in the Report. See OIP Op. Ltr. No. F17-02 at 9 (Dec. 8, 2016) ("An agency cannot use the presence of some protected information . . . to justify a wholesale redaction of all information.").

### III. CONCLUSION

The State AG has not met its burden of showing that the Report, by and large, comes within a UIPA exemption. So regarding the vast majority of the Report, the UIPA's presumption favoring disclosure has not been overcome.

We vacate the circuit court's final judgment and remand to the circuit court.

Within 60 days of the entry of our judgment the State AG shall present the circuit court with proposed redactions to the Report.

Descriptions of documents retrieved from Office of the Auditor's personnel files and *relating to individual employees* may be redacted. Information *exclusively* about policy infractions by non-Subject employees may also be redacted.

Any sentences concerning the physical health, disability-

status, mental illness, or body size of an Office of the Auditor employee may also be redacted.

Finally, the names of interviewees and non-Subjects employed by the Office of the Auditor and discussed in the Report may be redacted.

The circuit court shall review the State AG's proposed redactions and shall disallow any that are inconsistent with this opinion.

Within 90 days of the entry of our judgment the State AG shall give a copy of the Report - with only the redactions allowed by this opinion – to Civil Beat.

| | |
|---|---|
| Robert Brian Black,<br>for appellant | /s/ Michael D. Wilson |
| | /s/ Todd W. Eddins |
| Stella M.L. Kam,<br>(Patricia Ohara on the briefs)<br>for appellee | /s/ Paul B.K. Wong |

